# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN C., | ) |
| Plaintiff, | ) |
| | ) No. 18-cv-5732 |
| v. | ) |
| | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration,[1] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff John C. ("Plaintiff")[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The parties have filed cross motions for summary judgment.[3] As detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 16] and denies the Commissioner's motion for summary judgment [dkt. 26]. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

I. Background

    a. Factual Background and Procedural History

This case is brought the Court after a remand ordered on March 1, 2016. *Carbaugh v. Colvin*, 2016 WL 792299, at *6 (N.D. Ill. Mar. 1, 2016). As such, much of the facts remain the same from

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule Civil Procedure 25(d), he is hereby substituted as Defendant.

[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[3] Plaintiff has filed a Brief in Support of Reversal of Commissioner's Final Decision, which the Court construes as a motion for summary judgment [16].

this court's previous decision. *See Carbaugh v. Colvin*, 2016 WL 792299. The court refers back to the facts included in the prior opinion. On December 13, 2011, Plaintiff filed a claim for SSI under the Act, alleging disability beginning December 6, 2011 due to impairments arising from diabetes mellitus, extreme obesity with a body mass index ("BMI") in excess of 55, stomach bleeding, and heart problems. (R. 155-60, 166.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a first hearing before an Administrative Law Judge ("ALJ"), which was held on May 24, 2013. (R. 1-37.) On June 19, 2013, the ALJ denied Plaintiff's claim for SSI again, finding him not disabled under the Act. (R. 48-67.) The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and thus reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Plaintiff was born in 1967 and was forty-five years old at the time of his first hearing. (R. 162.) He completed eighth grade before dropping out of school, but has difficulty reading. (R. 5, 30, 331.) He worked as a general service technician at a tire store for fifteen years and has also done warehouse and cleaning work. (R. 230.) Medical records show that Plaintiff has struggled with losing weight: his weight was 420 pounds in December 2011, dropped to 406.8 pounds in January 2012, rose to 418.7 pounds in July 2012, fell to a low of 401.7 pounds on in February of 2013, and rose back up to 414.2 pounds in April 2013. (R. 272, 289, 369, 378, 490.) By 2015, Plaintiff's BMI had risen to 61. (R. 771).

One of Plaintiff's treating physicians, Dr. Austin, maintained records reflecting Plaintiff's reports of vision problems, left knee pain, and left shoulder pain, as well as mental health symptoms including depression, insomnia, and nightmares. (R. 271, 367, 369, 374, 375.) Dr. Austin completed a "Physical Residual Functional Capacity Questionnaire" on April 12, 2012. (R. 326-28.) After naming Plaintiff's diagnoses as diabetes type two, depression, obesity, and leukocytosis, she

described his "knee pain secondary to obesity," in both knees as "sharp, 10/10" and "worse with walking." Though she found that Plaintiff's symptoms would "rarely" interfere with the attention and concentration required to complete simple work tasks, she estimated that he could sit only 10 minutes at a time before needing to stand and could stand only 45 minutes at a time before needing to sit down or walk around. She opined that he could sit for less than two hours total and stand or walk for less than two hours total in an eight-hour workday, and that he needed a job that would permit shifting positions at will from sitting, standing, or walking. She opined that he could lift 10 pounds frequently but 20 pounds only rarely and 50 pounds never. (R. 327.)

The record also contains notes of Plaintiff's mental health symptoms and treatment, and widely varying opinion evidence as to Plaintiff's work-related mental limitations. (R. 221-25; 331-35; 348-49, 500-31.) In a Formal Mental Status Evaluation performed on July 13, 2012, psychologist Harvey I. Friedson, Psy.D., observed that Plaintiff had difficulty reading. Plaintiff could recognize letters and could read the words "bed" and "apple" but could not put the letters together to read the words "glove" or "breakfast." Dr. Friedman opined, "[h]e does appear functionally illiterate." In his conclusions, Dr. Friedman diagnosed Plaintiff as "Functionally Illiterate by Presentation," with a nonspecified depressive disorder. (R. 329-33.) In another Social Security ordered psychiatric evaluation in 2012, Dr. Bell opined that Plaintiff had a euthymic mood and diagnosed anxiety disorder and mild mental retardation. (R. 348-49.) In June of 2014, Dr. Galligan, PsyD. diagnosed Plaintiff with a major depressive disorder. (R. 1043.) In January 2015, Dr. Krishna Raol, M.D., diagnosed plaintiff with diabetes, morbid obesity, and depression. (R. 838).

At the May 24, 2013 hearing, the ALJ asked Vocational Expert James J. Radke ( "VE") to assume "a younger individual with a limited education" and Plaintiff's past work, who could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand or walk for six hours in an eight-hour work day and sit for six hours in a normal workday with normal rest periods; could only

3

occasionally crouch, kneel, or crawl; and could not work at heights, climb ladders, frequently negotiate stairs, or operate moving or dangerous machinery. The VE opined that Plaintiff's past work as an auto repair assistant would not be feasible, but that such an individual could perform jobs available in northeastern Illinois, including the jobs of cashier, mail clerk, and cleaner. (R. 32-34.)

The ALJ issued a first written decision on June 19, 2013, following the five-step analytical process required by 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of December 13, 2011. At step two, the ALJ concluded that Plaintiff had severe impairments of obesity and diabetes mellitus; he did not consider Plaintiff's elevated white blood cell count, left shoulder pain, or mental impairments to be severe. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. The ALJ then determined Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work, except that he is unable to work at heights, climb ladders, or frequently negotiate stairs; he may only occasionally crouch, kneel, or crawl; and he should not operate moving or dangerous machinery. At step four, the ALJ concluded that Plaintiff could not perform any of his past relevant work. (R. 53-60.) He also found that Plaintiff was a younger individual with "limited education," and that transferability of job skills was not material in Plaintiff's case. (R. 60.) At step five, based the VE testimony and the findings about Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding he was not disabled under the Act. (R. 60-62.)

As noted above, this Court issued an earlier remand in Plaintiff's case, concluding that the "ALJ failed to support his finding regarding plaintiff's educational attainment" and that the "ALJ erred in his analysis of the treating physician's opinion." (R. 659, 662.) We now remand the ALJ's second decision decided on December 12, 2016 for those same two reasons and because the ALJ did

4

not properly assess Plaintiff's mental impairments.

### b. The ALJ's Decision

The ALJ, Jose Anglada, issued a written decision on December 12, 2016. (R. 542-58.) The ALJ found Plaintiff was not under a disability, as defined in the Social Security Act, at any time since December 13, 2011 - the date the application was filed. (R. 557.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of application, December 13, 2011. (*Id.*) At step two, the ALJ concluded that Plaintiff had the severe impairments of obesity, obstructive sleep apnea, and diabetes. (R. 554.) The ALJ noted that Plaintiff's obesity, obstructive sleep apnea, and diabetes "cause more than minimal work-related restrictions and are therefore severe under the regulations." (*Id.*) However, the ALJ noted that all impairments other than those three "are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to result in more than minimal work-related restriction for a continuous period of at least 12 months, are not expected to result in death, and/or have not been properly diagnosed by an acceptable medical source as defined in the regulations." (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 549.) The ALJ determined that Plaintiff has the residual functional capacity to perform light work and can lift and carry no more than 20 pounds occasionally and 10 pounds frequently; can be on his feet standing/walking about six of eight hours per workday and sit about six hours with normal rest periods; is unable to work at heights, climb ladders, or frequently negotiate stairs; may only occasionally crouch, kneel, or crawl; and should avoid operation of moving or dangerous machinery. (R. 550.) At that hearing, the VE testified that a person of Plaintiff's age, education, work experience and residual functional capacity would be able to perform the requirements of representative occupations of housekeeping cleaner, assembler,

and cafeteria attendant. (R. 556). The ALJ concluded that claimant's education level is irrelevant as "the jobs cited by the vocational expert…do not have literacy requirements." (R. 555.) During Plaintiff's hearing, Plaintiff also testified that he is unable to read and comprehend warning labels on products and that he is unable to write a complete sentence. (R. 597, 600.)

## II. Social Security Regulations and Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "The ALJ has a duty

to fully develop the record before drawing any conclusions and must adequately articulate her analysis so that we can follow her reasoning." *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015).

## III. Discussion

Because the Court finds that the ALJ did not properly consider Plaintiff's reported symptoms or the record, the Court accepts three of Plaintiff's arguments and grants his motion, as discussed below.

### a. The ALJ Erred in Evaluating Plaintiff's Obesity as it Relates to his Ability to Find a Job as an Illiterate Individual

Although an illiterate person usually has had little to no formal education, "you can be illiterate even if you have had a significant amount of formal schooling (it may not have taken)." *Glenn v. Secretary of Health & Human Servs.*, 814 F.2d 387, 390 (7th Cir. 1987). As disability is a function of employment opportunities, the guidelines allow a person, albeit qualified to perform sedentary work, to collect disability benefits if she is illiterate. *Id.* At 389.

The ALJ rejected Plaintiff's argument that he is illiterate because the Plaintiff's "treating providers do not indicate the claimant unable to manage medical forms, etc." (R. 555.) The ALJ reported correctly that the Plaintiff completed education to the eighth grade and determined that made him an individual of "limited education." (*Id.*) The ALJ states that there "are no school records submitted to establish the claimant has inabilities in reasoning, arithmetic, and language skills that would reduce him below the limited education level." (R. 332, 555.) However, Dr. Friedson opined that Plaintiff was functionally illiterate, noting that he could not read the words "glove" or "breakfast." (*Id.*) Plaintiff did complete eighth grade but reported to Dr. Bell that he had been in special education for reading problems. (R. 508.) He had a neighbor complete the Function Report and Work History Report that were part of his application for benefits, and his girlfriend wrote down the medication list he brought to one of his exams. (R. 180, 189, 330, 334.) Plaintiff's own past testimony suggests he would have trouble completing a job application. (R. 30.)

7

In accordance with this Court's prior remand instructions, the case must be remanded again "so that the Commissioner may meet her burden of proving that there exist jobs in the economy that Plaintiff can perform. This may require additional findings of fact regarding Plaintiff's actual level of reading ability." (R. 662.) The ALJ claims that the claimant's education level is irrelevant, as the jobs cited by the vocational expert, including housekeeping cleaner, assembler, and cafeteria attendant, do not have literacy requirements. (R. 555-56.) The ALJ's determination that because Plaintiff can read "some things" and "write his name and small words," Plaintiff's argument that he is illiterate is not supported by the objective record. (R. 555). Had Plaintiff been limited to sedentary work, and found to be illiterate, he would be found to be disabled. (20 CFR § Pt. 404, Subpt. P, App. 2.) The Court finds that the ALJ erred in his analysis because he simply determined that Plaintiff was not illiterate because he had a limited education. Further, no additional fact discovery occurred as ordered.

In sum, Plaintiff's arguments regarding his illiteracy are accepted, and this is an error requiring remand.

### b. The ALJ Did Not Properly Account for Plaintiff's Mental Limitations in the RFC

The Court finds error in the ALJ's consideration of this evidence and his reasoning. Here, Plaintiff points to evidence he had mental limitations diagnosed at later dates than those the ALJ considered including anxiety disorder, mental retardation, dysthymic disorder, PTSD, major depressive disorder, was assigned a GAF of 56, and was having nightmares and flashbacks about gang violence. (R. 224, 500, 508-09, 913, 1043.) The Court agrees with Plaintiff's argument that the ALJ failed to account for Plaintiff's mental limitations.

Plaintiff argues the ALJ's decision failed to accommodate any mental limitations in his RFC assessment. (Dkt. 13 at 8.) The ALJ addressed the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1.) (R. 52.) Plaintiff contends that the ALJ's argument that the

8

State Agency psychological consultant is an expert in disability claims was uncompelling and that the opinion is inconsistent with the evidence of the record. (Dkt. 13 at 8-9; R. 16.)

The ALJ determined that the claimant's medically determinable mental impairments of affective disorder and history of substance abuse "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." (R. 546.) However, the ALJ relied upon evaluations conducted in 2012 and 2013, a time predating significant psychiatric treatment – including Dr. Galligan, PsyD's diagnosing of Plaintiff with a major depressive disorder and Dr. Raol's diagnosing of plaintiff with depression. (R. 546, 838, 1043.) The evaluation conducted by Dr. Friedson noted that claimant was cooperative and had a range of affect during the examination and, at times, "he does appear quite sad" and "depressed." (R. 329, 331.) Additionally, Dr. Friedson diagnosed claimant with "Depressive Disorder, NOS." (R. 332.)

The ALJ also cites to Dr. Bell's examination of claimant on July 25, 2012. (R. 546.) Although the ALJ correctly notes that Plaintiff was observed by Dr. Bell to be cooperative, euthymic, his affect was within normal limitations, and that his intelligence was estimated to be average, the ALJ fails to address Dr. Bell's diagnoses of claimant's "anxiety disorder NOS 300; Axis II – mild mental retardation unspecified 319." (R. 349, 546.)

The ALJ concluded that the records from Greater Grand Mental Health Center in April 2013 illustrate that the claimant's mood was within normal limits and his affect was appropriate, thus finding no more than a mild limitation. (R. 547-48.) However, in the next sentence of the ALJ's decision, he notes that "mental status examination findings more recently indicate the claimant had diagnosis of major depression, moderate, with global assessment of functioning 54, consistent with 'moderate' symptoms or difficulties functioning per the DSM-IV." (R. 548.)

In November 2012, Plaintiff was noted to "exhibit difficulty concentrating and focusing" and has "problems interacting/socializing with people" by Shilynda Scott-Tolbert, LCSW. (R. 224.) In

February of 2013, Plaintiff reported continuing nightmares and flashbacks about gang violence to Scott-Tolbert. (R. 500.) Further, in June of 2014, Dr. Raol diagnosed Plaintiff with major depression that is recurrent. (R. 1043.)

Because the ALJ failed to properly account for claimant's mental limitations, the Court believes this is also an error mandating remand.

### c. The ALJ Erred in His Analysis of the Treating Physician's Opinion

In general, an ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Otherwise, the ALJ must "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Id.*

The ALJ assessed claimant's treating provider's notes, Dr. Austin. (R. 554.) However, the ALJ states that Dr. Austin's conclusions are given little weight in determining the claimant's residual functional capacity. (*Id.*) The ALJ is required to "provide a sound explanation for his decision to reject [the treating physician's opinions]." *Roddy v.* Astrue, 705 F.3d 631, 636 (7th Cir. 2013). The Court agrees with Plaintiff's argument that the ALJ failed to address evidence that was favorable to Plaintiff's claim. The ALJ concluded that Dr. Austin provides "no specific objective findings to support her conclusions, other than the claimant's subjective complaints of knee pain related to

obesity." (R. 554.) Dr. Austin also observed a cystic mass in his knee and an X-ray showing degenerative changes in his shoulder. (R. 401, 449.) Because the ALJ erred in his analysis of Dr. Austin's opinion, the court finds that this is an error mandating remand. The Court believes that Plaintiff's motion should be granted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's Motion for Summary Judgment (dkt. 26) is denied and Plaintiff's motion (dkt. 16) is granted. The final decision of the Commissioner is reversed and remanded.

Entered: October 23, 2019

_____

U.S. Magistrate Judge, Susan E. Cox